# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bethlehem Manor Village, LLC | : | |
| 1177 6th Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | CIVIL ACTION NO: |
| | : | |
| City of Bethlehem, | : | |
| 10 East Church Street | : | **JURY TRIAL DEMANDED** |
| Bethlehem, PA 18018 | : | |
| | : | |
| and | : | |
| | : | |
| City Council of the City of | : | |
| Bethlehem | : | |
| 10 East Church Street | : | |
| Bethlehem, PA 18018 | : | |
| | : | |
| and | : | |
| | : | |
| Robert J. Donchez, former Mayor | : | |
| of the City of Bethlehem | : | |
| 377 Devonshire Drive | : | |
| Bethlehem, PA 18017 | : | |
| | : | |
| | : | |
| *Defendants* | : | |

## CIVIL ACTION COMPLAINT

Plaintiff Bethlehem Manor Village, LLC, by and through its attorneys, Eastburn and Gray,

PC, files this complaint against Defendants City of Bethlehem, the City Council of the City of

Bethlehem, and Robert J. Donchez, former Mayor of the City of Bethlehem.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a), 42 U.S.C. § 12182(a), and 29 U.S.C. § 794(a).

2.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

3.      This action is brought pursuant to 42 U.S.C. § 1983, the United States Constitution, the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (the "Rehabilitation Act").

## PARTIES

4.      Plaintiff Bethlehem Manor Village, LLC ("BMV") is a Pennsylvania limited liability company, with a registered address of 1177 6th Street, Whitehall, PA 18052.

5.      Defendant City of Bethlehem ("City") is a municipal corporation organized under the Third Class City Code, 11 Pa.C.S. § 35101, *et seq.*

6.      Defendant City Council of the City of Bethlehem (the "City Council") is the governing body of the City, which operates on a mayor-council form of government.

7.      Defendant City and Defendant City Council have an address of 10 East Church Street, Bethlehem, PA 18018.

8.      Defendant Robert J. Donchez (the "Mayor") is an adult individual who served as the Mayor of the City of Bethlehem from 2014 through 2022. Defendant Mayor is an adult individual residing, upon information and belief, at 377 Devonshire Drive, Bethlehem, PA 18017. City, the City Council, and the Mayor are collectively referred to herein, where appropriate, as the "City Defendants".

## FACTS

9.      BMV is the owner of that certain 5-acre property located at 1838 Center Street in the City (the "Property").  BMV has owned the Property since 2007.

10.      As early as 2010, BMV identified a need for a psychiatric hospital in the City that would serve the "Lehigh Valley", which is comprised of Lehigh County and Northampton County, and began to investigate the feasibility of developing and operating a psychiatric hospital on the Property.

11.      At all times relevant to this action, the Property has been zoned and located in an I-Institutional Zoning District (the "Institutional District") under the City's zoning ordinance and zoning map.

12.      In 2010, the following use was a permitted use in the Institutional District:

> Hospital, nursing or convalescent home, medical or health center or similar health facility.

Selected sections of the zoning ordinance in effect in 2010 (referred to herein as the "2008 Zoning Ordinance") are attached hereto as Exhibit "A" and incorporated herein as if fully set forth.

13.      The term "hospital" was defined by the 2008 Zoning Ordinance as:

> A building used for the diagnosis, treatment or other care of human ailments, unless otherwise specified.  A hospital shall be deemed to include a sanitarium, clinic, convalescent home, nursing home, rest home, or other building with an equivalent appellation.

Ex. "A" (2008 Zoning Ordinance, § 1302.45).

14.      On or about June 15, 2012, the City, by and through its City Council, adopted a new zoning ordinance.  Selected sections from the zoning ordinance adopted on or about June 15, 2012 (referred to herein as the "2012 Zoning Ordinance") are attached hereto as Exhibit "B" and incorporated herein as if fully set forth.

15.     Under the 2012 Zoning Ordinance, a "Hospital or Surgery Center or Related Testing and Treatment Facilities" was a permitted use in the Institutional District and, therefore, a permitted use on the Property.

16.     The 2012 Zoning Ordinance amended the broad definition of "hospital" under the 2008 Zoning Ordinance to limit a "hospital" to a building licensed by the Pennsylvania Department of Health.  The 2012 Zoning Ordinance defined a "hospital" as follows:

> A building(s) which is licensed by the Pennsylvania Department of Health as a Hospital, and which involves the diagnosis and treatment of human ailments.

Ex. "B" (2012 Zoning Ordinance, § 1302.54).

17.     On April 11, 2013, BMV filed preliminary land development plans with the City. The plans were filed under and pursuant to the provisions of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10101, *et seq.* (the "MPC"), and the subdivision and land development ordinance of the City ("SALDO"). The plans proposed the development of a psychiatric hospital under the "Hospital or Surgery Center or Related Testing and Treatment Facilities" use category as permitted on the Property under the 2012 Zoning Ordinance.

18.     By letter dated September 12, 2013 (the "Land Development Approval Letter"), BMV's land development plans, referred to in paragraph 17, *supra*, were granted conditional approval by the City's Planning Commission (the "2013 Land Development Approval").  A true and correct copy of the Land Development Approval Letter is attached hereto as Exhibit "C" and incorporated herein as if fully set forth.

19.     In the Land Development Approval Letter, the Planning Commission imposed seven (7) conditions of approval, including:

a.      the condition that BMV obtain "a determination that the proposed plan is a permitted use at the [P]roperty";

b.      the condition that BMV "obtain any and all necessary approvals and licenses from the Commonwealth of Pennsylvania, including…any licensing necessary to open and operate the proposed facility under applicable law";

c.      the condition that BMV "shall not operate a Treatment Center at this site as defined in the Zoning Ordinance"; and

d.      the condition that BMV "obtain a determination from the [City's] Zoning Officer regarding any and all uses proposed and shall meet any provisions of the Zoning Ordinance prior to receiving a building permit".

Ex. "C" (Land Development Approval Letter).

20.      Following receipt of the 2013 Land Development Approval, BMV began the process of working to satisfy the conditions of approval with the intent of developing and operating a psychiatric hospital on the Property.

21.      In or about October 2015, BMV informed the City's planning and zoning department that it had been contacted by a national owner/operator of psychiatric hospitals that was ready and willing to purchase the Property and develop and operate a psychiatric hospital on it ("Prospective Purchaser").

22.      BMV entered into a Purchase and Sale Agreement with an effective date of October 14, 2015 to sell the Property to Prospective Purchaser.

23.     BMV, on behalf of the Prospective Purchaser, submitted to the City a conceptual site plan for the proposed psychiatric hospital for review by the City Zoning Officer to confirm that the psychiatric hospital was a permitted use on the Property.

24.     Following review of the conceptual site plan, the City Zoning Officer, by letter dated November 2, 2015 (the "2015 Zoning Opinion"), opined that the proposed psychiatric hospital was permitted by right on the Property, and that "[b]ased on the above information, there are no Use or Dimensional issues that would require relief from the City of Bethlehem Zoning Hearing Board." True and correct copies of the 2015 Zoning Opinion and the conceptual plan referenced in paragraph 23, *supra*, are attached hereto collectively marked Exhibit "D" and incorporated herein by reference.

25.     After receiving the 2015 Zoning Opinion, representatives for BMV and the Prospective Purchaser began meeting with the City's planning and zoning department to discuss the psychiatric hospital proposal.

26.     As the prospect of development of a psychiatric hospital on the Property became closer to a reality, City Defendants embarked on a full-scale effort to stop the development of a psychiatric hospital on the Property.

27.     Although BMV had already received the 2013 Land Development Approval, the City advised Prospective Purchaser that the approval process for Prospective Purchaser's proposed psychiatric hospital would need to start over at the beginning of the land development process because the Prospective Purchaser's plan was not identical to BMV's plan.  This meant that before the psychiatric hospital could move forward, BMV needed to start back at square one—with new plans, new review timelines, months of delay, and significant expense.

28.     The City Defendants, in concert with neighboring city residents, actively discouraged Prospective Purchaser from purchasing the Property by making it clear that the City would oppose Prospective Purchaser's efforts to develop a psychiatric hospital on the Property.

29.     In September 2016, the Prospective Purchaser terminated the Purchase and Sale Agreement.  BMV believes, and therefore avers, that City's advice to the Prospective Purchaser that it would be required to begin the land development approval anew was the primary reason that Prospective Purchaser terminated the agreement. Following Prospective Purchaser's termination of the Purchase and Sale Agreement, BMV continued in its efforts to develop a psychiatric hospital on the Property.

30.     In a February 3, 2017 e-mail, BMV requested a renewed determination from the City Zoning Officer that a psychiatric hospital would be permitted as a "hospital" as that term was defined under the 2012 Zoning Ordinance. A true and correct copy of the February 3, 2017 e-mail is attached hereto as Exhibit "E" and incorporated herein as if fully set forth.

31.     A meeting was called by Defendant Mayor, in his office, to discuss BMV's continuing efforts to open a psychiatric hospital in the City.  Attendees at the meeting included the City's Director of Economic Development, the City's Director of Planning and Zoning, the City's Assistant Director of Planning and Zoning, the City's Zoning Officer, and the Assistant City Solicitor.  BMV believes, and therefore avers, that this meeting between elected City officials, appointed City officials, and City employees was highly irregular and far outside of the City's normal zoning and land development procedures.

32.     At the meeting referenced in paragraph 31, *supra*, Defendant Mayor directly instructed the Zoning Officer and all others present to take all steps necessary to prevent the

psychiatric hospital from opening in the City because the City "does not want those people here"—referring to persons in need of treatment in a psychiatric hospital.

33.     The City took almost two months to respond to the February 3, 2017 request for a zoning determination.

34.     Contrary to the position taken in the 2015 Zoning Opinion, in a letter dated March 24, 2017, City Defendants, by and through the City's planning and zoning department, took the position that the City could not determine whether a psychiatric <u>hospital</u> met the definition of a "<u>hospital</u>" in the 2012 Zoning Ordinance.  The City staff informed BMV that it needed to submit additional information before the City would render an opinion on whether the proposed psychiatric <u>hospital</u> was a "<u>hospital</u>."  A true and correct copy of the March 24, 2017 letter is attached hereto as Exhibit "F" and incorporated herein as if fully set forth.

35.     The March 24, 2017 letter requested detailed information irrelevant to the requested zoning determination, including information on how patients would arrive at the hospital and disclosure of what medications would be distributed at the hospital. *See* Ex. "F" (March 24, 2017 letter).

36.     In order to respond to the March 24, 2017 letter, it was necessary for BMV to expend significant additional time and resources, including, *inter alia*, significant expenditures for legal fees, engineering fees, and other consultant fees, compiling information and documentation far above-and-beyond what is normally or reasonably required for purposes of a zoning determination.

37.     BMV believes and therefore avers that the City's refusal to process BMV's request for a zoning determination was a deliberate, intentional tactic by City Defendants designed to frustrate and delay BMV's efforts to establish a psychiatric hospital.

38.     While BMV was working to respond to the March 24, 2017 letter referenced in paragraph 34, *supra*, the Assistant City Solicitor issued an Interoffice Memorandum dated April 27, 2017 (referred to herein as the "2017 Memo"), recommending a change to the City's zoning ordinance. Defendant Mayor was copied on the 2017 Memo. A true and correct copy of the 2017 Memo is attached hereto as Exhibit "G" and incorporated herein as if fully set forth.

39.     The 2017 Memo recommended an amendment to the City's zoning ordinance (a draft zoning amendment was attached to the memo) to prevent standalone psychiatric hospitals under the "hospital" use—the very use BMV proposed on the Property.

40.     The 2017 Memo  requested that City Council adopt a resolution (a draft resolution was attached to the memo) declaring the proposed zoning amendment a "pending ordinance":

> The Administration specifically requests City Council to immediately enact the attached resolution to declare this proposed amendment as a "pending ordinance" under the judge-created "pending ordinance doctrine." This will allow Administration to deny a permit application to conduct the use if the pending zoning amendment would prohibit the use for which the permit is sought.

Ex. "G" (2017 Memo).

41.     As set forth in the foregoing excerpt from the 2017 Memo, the resolution was designed to allow City Defendants, under the "pending ordinance doctrine", to deny an application for the exact use proposed by BMV—a standalone psychiatric hospital.

42.     BMV became aware of the possibility that the City was planning to amend the 2012 Zoning Ordinance in furtherance of its efforts to keep a psychiatric hospital out of the City.

43.     On May 2, 2017, BMV filed a new application for land development plan approval for a psychiatric hospital (the "2017 Land Development Application"). A true and correct copy of the May 2, 2017 transmittal letter is attached hereto as Exhibit "H" and incorporated herein as if fully set forth.  As set forth in the May 2, 2017 transmittal letter, the 2017 Land Development

Application was submitted without prejudice to the previously granted 2013 Land Development Approval.

44.     Although it initially accepted the 2017 Land Development Application for processing, fifty-nine (59) days after the submission of the 2017 Land Development Application, the City sent a letter dated June 30, 2017, to BMV advising that the City considered the application incomplete.  A true and correct copy of the June 30, 2017 letter is attached hereto as Exhibit "I" and incorporated herein as if fully set forth.

45.     Six days after rejecting as "incomplete" the 2017 Land Development Application, on July 6, 2017, the City, by and through its City Council with the approval of the Mayor, adopted the zoning ordinance amendment (referred to herein as the "2017 Zoning Amendment") recommended in the 2017 Memo, amending the definition of the term "hospital" to the following:

> A building which is licensed by the Pennsylvania Department of Health as a Hospital, and which involves the diagnosis and treatment of human ailments, and which may include behavioral health facilities and psychiatric hospitals operated in accordance with all laws and regulations, provided the behavioral health facilities occupy no more than 25% of the floor space of the hospital facilities directly associated with the diagnosis, care treatment, and sleeping facilities of patients.

A true and correct copy of the 2017 Zoning Amendment is attached hereto as Exhibit "J" and incorporated herein as if fully set forth.

46.     The 2017 Zoning Amendment also amended the City's zoning ordinance to group "behavioral health facilities" and "psychiatric hospitals" in the same use category as "treatment centers", by amending the definition of a treatment center to include:

> A behavioral health facility and/or psychiatric hospital meeting the requirements of all laws and regulations shall qualify as a Treatment Center.

Ex. "J" (2017 Zoning Amendment, § 2).

47.     One of the conditions of BMV's 2013 Land Development Approval was that it could not operate a treatment center.  A treatment center was not, and is not, a permitted use in the Institutional District.

48.     The zoning ordinance definition of "hospital" and "treatment center" adopted by the 2017 Zoning Amendment remain in full force and effect today in the City's zoning ordinance.

49.     Although BMV's 2013 Land Development Approval was granted under the 2012 Zoning Ordinance and the 2012 Zoning Ordinance controlled BMV's use of the Property under and pursuant to the 2013 Land Development Approval, the 2017 Zoning Amendment operates to directly prevent any future land development of a psychiatric hospital on the Property.

50.     BMV believes, and therefore avers, that one of the purposes of the adoption of the 2017 Zoning Amendment was to frustrate BMV's effort to develop a psychiatric hospital on the Property.  City Defendants knew that if they were successful in frustrating BMV's efforts to satisfy the conditions of BMV's 2013 Land Development Approval, BMV would be unable to pursue its plan to develop a psychiatric hospital in the City on its Property by reason of adoption of the 2017 Zoning Amendment.

51.     The 2017 Land Development Application, filed before the 2017 Zoning Amendment was adopted, posed a problem for the City Defendants, because the 2012 Zoning Ordinance would apply to that land development application.

52.     By letter dated July 13, 2017, counsel for BMV informed the City that it was without legal authority to refuse to process the 2017 Land Development Application.  A true and correct copy of the July 13, 2017 letter is attached hereto as Exhibit "K" and incorporated herein as if fully set forth.

53.     Only after adoption of the 2017 Zoning Amendment and receipt of the July 13, 2017 letter from BMV's counsel did the City proceed to process the 2017 Land Development Application.

54.     On or about January 4, 2018, BMV became aware that the City had placed the 2017 Land Development Application on the agenda of the Planning Commission meeting scheduled for January 11, 2018.  No written notice of the meeting was sent to BMV's counsel, although the City was aware of counsel's representation of BMV.

55.     BMV's counsel informed the City they were unavailable to attend the Planning Commission meeting on such short notice (counsel being out of the country, and co-counsel being out of the state, on the meeting date).  BMV's counsel requested, as is customary in such circumstances, that the matter be continued so that counsel could attend, and granted the City a 90-day extension to take action on the application pursuant to the provisions of Section 508(3) of the MPC, 53 P.S. § 10508(3) (allowing for extensions of MPC timelines upon written agreement of the applicant), to permit the meeting to be rescheduled without prejudice to the City.

56.     At its January 11, 2018 meeting, the Planning Commission refused to grant a continuance or to acknowledge BMV's right to grant the City an extension of the time for the Planning Commission to act.  Instead, without allowing BMV the assistance of counsel familiar with the application, the Planning Commission voted to deny approval of the 2017 Land Development Application.

57.     On February 9, 2018, BMV filed an appeal of the Planning Commission's denial of the 2017 Land Development Application to the Northampton County Court of Common Pleas. In its Land Use Appeal Notice, BMV asserted that the City acted in bad faith in the course of its review of the 2017 Land Development Application, and that the denial by the Planning

Commission was part of City Defendant's ongoing effort to deprive BMV of its legal right to establish a psychiatric hospital on the Property.  A true and correct copy of BMV's Land Use Appeal Notice is attached hereto as Exhibit "L" and incorporated herein as if fully set forth.

58.     City Defendants' bad faith in processing the 2017 Land Development Application caused BMV to expend significant time and expense in response thereto.

59.     The delay caused by City Defendants' bad faith in processing the 2017 Land Development Application served two purposes in furtherance of the City Defendants intentional efforts to prevent the development of a psychiatric hospital on the Property.  First, BMV believes, and therefore avers, that it was a direct attempt by City Defendants to prevent BMV from successfully pursuing land development approval under the 2012 Zoning Ordinance while the City Council and Mayor took the necessary legal steps to adopt the 2017 Zoning Amendment.  Second, it continued to allow other psychiatric hospitals and psychiatric units to open or expand within the Lehigh Valley but outside of the City.

60.     On July 11, 2018, BMV, through its agent Pennsylvania Venture Capital, Inc. ("PVC"), in its continuing efforts to satisfy the conditions of its 2013 Land Development Approval, submitted a zoning permit application to the City Zoning Officer (the "Zoning Permit Application"). The Zoning Permit Application contained detailed information on the proposed psychiatric hospital, and was BMV's response to the March 24, 2017 letter from the City's planning and zoning department identified in paragraph 34, *supra.*  A true and correct copy of the Zoning Permit Application and its accompanying letter is attached hereto as Exhibit "M" and incorporated herein as if fully set forth.

61.     The Zoning Permit Application and accompanying cover letter described the proposed use as a "Private Inpatient Acute Hospital" and included an application to the

Pennsylvania Department of Health for the psychiatric hospital.  *See* Ex. "M" (Zoning Permit Application).

62.     BMV demonstrated in the Zoning Permit Application that the 2012 Zoning Ordinance's definition of "hospital" clearly encompassed BMV's proposed use.

63.     But-for City Defendants' deliberate and continuing efforts to prevent a psychiatric hospital in the City, BMV believes, and therefore avers, that the City Zoning Officer, as she had previously determined in the 2015 Zoning Opinion, would have reached the conclusion that the proposed psychiatric hospital was a "hospital" as defined in the 2012 Zoning Ordinance.

64.     Unlike a typical zoning permit application, which is processed solely by the City Zoning Officer, BMV's Zoning Permit Application was reviewed and the response to it drafted by several members of the City's planning and zoning department, and by the Assistant City Solicitor.

65.     The City Zoning Officer issued a letter dated July 20, 2018 denying the Zoning Permit Application (referred to herein as the "Permit Denial").  A true and correct copy of the Permit Denial is attached hereto as Exhibit "N" and incorporated herein as if fully set forth.

66.     The stated reason for the Permit Denial was that the proposed psychiatric hospital was not permitted because it did not meet the zoning ordinance definition of a "hospital." Instead the Permit Denial concluded that the proposed psychiatric hospital met the definition of a "treatment center" under the 2012 Zoning Ordinance.  *See* Ex. "N" (Permit Denial).

67.     The Permit Denial concluded, *inter alia*, that because the proposed psychiatric hospital was a secure facility "for the safety of everyone," it was clear "that the facility will be used as a treatment facility by providing services to a person with a type of mental illness or other behavior that causes a person to be a threat to the physical safety of others."  *See* Ex. "N" (Permit Denial).

14

68.     The Permit Denial also concluded that the proposed psychiatric hospital did not qualify as a "hospital" under the 2012 Zoning Ordinance because the "building would not be 'licensed by the Pennsylvania Department of Health as a Hospital', even though the care may involve the diagnosis and treatment of human ailments." *See* Ex. "N" (Permit Denial).

69.     A psychiatric hospital is not, and cannot factually or legally be, a treatment facility under Pennsylvania law.

70.     Because there was no other use category under the 2012 Zoning Ordinance into which a psychiatric hospital would fall, pursuant to City Defendants' construction of the definition of "hospital" under the 2012 Zoning Ordinance, as set forth in the Permit Denial, a psychiatric hospital was not permitted anywhere in the City.

71.     The Permit Denial is further evidence of the City Defendants' strategy to preclude the development of a psychiatric hospital within the City limits.

72.     A treatment center is not a permitted use in the Institutional Zoning District on the Property, or under the 2013 Land Development Approval.

73.     On July 25, 2018, BMV, and its agent PVC, filed an appeal of the Zoning Officer's Permit Denial (the "ZHB Appeal") to the City of Bethlehem Zoning Hearing Board ("ZHB").

74.     BMV presented testimony from three experts that the proposed psychiatric hospital was not, and would/could never be, a treatment center—either factually or legally.

75.     The City participated in the hearing before the ZHB and steadfastly persisted in its effort to have the proposed psychiatric hospital classified as a "treatment center."

76.     The City argued that the patients who would be treated in the psychiatric hospital would be a danger to residents of the City.

77.     On February 1, 2019, the ZHB issued a written decision denying the BMV appeal (the "ZHB Decision").  A 3-2 majority of the ZHB agreed with the Zoning Officer's conclusion, as set forth in the Permit Denial, that the proposed use was a "treatment center" and not a "hospital."  A true and correct copy of the ZHB Decision is attached hereto as Exhibit "O" and incorporated herein as if fully set forth.

78.     On February 27, 2019, BMV appealed the ZHB Decision to the Court of Common Pleas of Northampton County.  The Court of Common Pleas, in an Opinion and Order dated November 15, 2019, affirmed the ZHB Decision.

79.     BMV appealed the decision of the Court of Common Pleas to the Commonwealth Court of Pennsylvania.  In a Memorandum Opinion dated January 29, 2021, Commonwealth Court held that BMV's proposed use of the Property for a psychiatric hospital was a permitted use under the 2012 Zoning Ordinance.

80.     Upon application by BMV's counsel, the Commonwealth Court issued a *per curiam* order on April 8, 2021, ordering the Memorandum Opinion be designated "opinion" and reported at *Bethlehem Manor Village, LLC v. Zoning Hearing Bd. of City of Bethlehem*, 251 A.3d 448, 450 (Pa. Commw. Ct. 2021).   A true and correct copy of the reported opinion is attached hereto as Exhibit "P" and incorporated herein as if fully set forth.

81.     Notwithstanding the incontrovertible conclusion reached by Commonwealth Court, City Defendants continued their efforts to prevent a psychiatric hospital by petitioning for allowance of appeal to the Pennsylvania Supreme Court—further delaying resolution of the issue. The City's petition was denied by *per curiam* order dated August 11, 2021. *Bethlehem Manor Village LLC v. Zoning Hearing Bd.*, 260 A.3d 922 (Pa. 2021).

82.     By the time Commonwealth Court issued its decision and the Pennsylvania Supreme Court denied the City's petition for allowance of appeal, several psychiatric hospitals and/or psychiatric units were built and/or expanded in the Lehigh Valley outside of the City limits.

83.     From the date of  adoption of the 2012 Zoning Ordinance on June 15, 2012 , to the *per curiam* order issued by the Pennsylvania Supreme Court on August 11, 2021, City Defendants successfully prevented BMV from obtaining the approvals it needed to develop a psychiatric hospital in the City.

84.     As a result of the detailed actions in the preceding paragraphs of this Complaint, the City Defendants have succeeded in their intentional and unlawful efforts to keep "those people" (psychiatric patients) out of the City.

85.     City Defendants' decade-long effort to prohibit and/or delay and frustrate efforts to provide facilities in the City for the treatment of patients in need of psychiatric treatment represents a discriminatory policy which continues today.

86.     BMV believes, and therefore avers, that it was the only party that attempted to develop a psychiatric hospital in the City during the time period relevant to this matter.

87.     As a direct result of City Defendants' actions outlined hereinabove, BMV believes, and therefore avers, that no psychiatric hospital can be, or will be, opened in the City, notwithstanding the needs of its residents, and the clear right of those persons that would otherwise have been BMV's clients to receive treatment.

88.     BMV believes, and therefore avers, that but for the City Defendants' actions, BMV would have been successful in its efforts to develop a private psychiatric hospital on the Property.

89.      Based on projections prepared for BMV by its consultants who had an expertise in the psychiatric hospital industry, BMV believes, and therefore avers, that from the time its

proposed psychiatric hospital was open and fully operational it would have realized a profit of $2,500,000.00 per year.

90.     All actions described hereinabove by City Defendants, their officials and employees, were taken in the course of City Defendants' performance of their duties and responsibilities for and on behalf of the City, and are attributable to the City and its City Council and Mayor, and demonstrate a City-wide policy, from City Council and Defendant Mayor down, to prevent a psychiatric hospital in the City.

**COUNT I**
**BETHLEHEM MANOR VILLAGE, LLC v. CITY OF BETHLEHEM**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT**

91.     BMV incorporates paragraph 1 through 90 above as if fully set forth.

92.     BMV has standing to seek relief against the City of Bethlehem on its own behalf and on behalf of its disabled patients under the ADA, 42 U.S.C. § 12101. *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 406 (3d Cir. 2005) (*abrogated on other grounds*).

93.     Section 12132 of the ADA constitutes a general prohibition against discrimination on the basis of disability by public entities.  42 U.S.C. §12132.

94.     The term "public entity" as used in the ADA means any state or local government or any department, agency, special purpose district, or other instrumentality of a state or local government. 42 U.S.C. § 12131(1).

95.     The City is a qualifying public entity within the meaning of the ADA.

96.     Actions with respect to zoning and/or land development applications are an "activity" of a public entity to which the ADA applies, including the issuance, or non-issuance, of a zoning permit.  *Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 232 (S.D.N.Y. 1996), *aff'd in part*, 117 F.3d 37 (2d Cir. 1997).

97.     The ADA defines an individual with a disability as anyone with a mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A).

98.     The ADA recognizes as disabled those individuals with drug addiction, alcoholism, and mental disorders. *Kathleen S. v. Dept. of Pub. Welfare of Com. of Pa.*, 10 F. Supp. 2d 460, 470 (E.D. Pa. 1998).

99.     The ADA grants the right to relief to entities discriminated against because of the known disability of individuals with whom the entity is known to have a relationship or association. *Addiction Specialists, Inc*, 411 F.3d 405–06.

100.    The City's attempts to use its zoning and land development powers to prevent BMV's psychiatric hospital, or any psychiatric hospital in the City, from opening due to a psychiatric hospital's association with disabled patients violates the ADA. *Tsombanidis v. City of West Haven*, 180 F.Supp.2d 262 (D.Conn. 2001), *aff'd in part, reversed in part* 352 F.3d 565.

101.    The City's discriminatory actions against BMV and BMV's disabled patients include:

a.      The issuance of the 2017 Interoffice Memorandum recommending an amendment to the City's zoning ordinance to <u>prevent</u> standalone psychiatric hospitals, denying needed care for "those people," and setting forth City Defendants' strategy to deny an application for a psychiatric hospital under the pending ordinance doctrine;

b.      Amendments to the City's zoning ordinance in 2012 and 2017 with respect to hospitals/treatment centers designed to prevent a psychiatric hospital on BMV's Property and in the City at large;

  c.  The application of the City's zoning ordinance, and the amendments thereto, to BMV's Property, BMV's land use applications, and the psychiatric hospital use in order to deny BMV's disabled patients their right to care in a psychiatric hospital within the City;

  d.  The handling of BMV's Zoning Permit Application outside of the procedures established in the MPC or the City's own ordinances;

  e.  The City's direct efforts to prevent BMV from developing a psychiatric hospital under the 2013 Land Development Approval;

  f.  The City's active interference with the Purchase and Sale Agreement between BMV and Prospective Purchaser for the purchase of the Property and development of a psychiatric hospital on it;

  g.  The City's bad faith review of BMV's 2017 Land Development Application; and

  h.  The overarching strategy to prevent a psychiatric hospital in the City.

102. The City's actions violate Title II of the ADA, and such actions harmed and continue to harm BMV and BMV's disabled patients.

103. Because of the City's discriminatory behavior, BMV has expended time and financial resources and has suffered harm. BMV's expenses include, but are not limited to, the following:

  a.  Zoning application fees;

  b.  Land development application fees;

  c.  Engineering fees to prepare site plans; and,

      d.    Legal fees, and other consultant fees to pursue zoning approvals and land development approvals, to respond to the City's handling of BMV's zoning and land development applications, and to prosecute appeals from the City's denials of BMV's applications.

104.    Because of the City's discriminatory behavior, BMV will no longer be able to develop and operate a psychiatric hospital on the Property.

105.    Because of the City's discriminatory behavior, BMV suffered harm and economic injury by being denied the opportunity to conduct its business and provide a service without interference by Defendant, resulting in substantial lost profits.

106.    Because of the City's discriminatory behavior, BMV's disabled patients are denied their right to care in a psychiatric hospital within the City.

107.    Because of the City's discriminatory behavior, BMV has suffered, and will continue to suffer, losses as set forth hereinabove.

## COUNT II
### BETHLEHEM MANOR VILLAGE, LLC v. CITY OF BETHLEHEM
### VIOLATION OF REHABILITATION ACT

108.    BMV incorporates paragraphs 1 through 107 above as if fully set forth.

109.    Section 504 of the Rehabilitation Act prohibits discrimination against persons with disabilities by any entity that receives federal financial assistance.  29 U.S.C. § 794(a).

110.    The City receives federal financial assistance.

111.    The Rehabilitation Act, similar to the ADA, defines an individual with a disability as any individual with a physical or mental impairment that substantially limits one or more major life activities.  *Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 799 F. Supp. 2d 473, 486 (E.D. Pa. 2011).

112.    The Rehabilitation Act recognizes as disabled those individuals with drug addiction, alcoholism, and mental disorders.

113.    The Rehabilitation Act grants the right to relief to entities discriminated against because of the known disability of individuals with whom the entity is known to have a relationship or association. *Addiction Specialists, Inc.*, 411 F.3d at 405–06.

114.    The City's attempts to use its zoning and land development powers to prevent BMV's psychiatric hospital, or any psychiatric hospital in the City, from opening due to a psychiatric hospital's association with disabled patients violates the Rehabilitation Act. *Tsombanidis*, 180 F.Supp.2d 262.

115.    The City's discriminatory actions include:

a.      The issuance of the 2017 Interoffice Memorandum recommending an amendment to the City's zoning ordinance to <u>prevent</u> standalone psychiatric hospitals, denying needed care for "those people," and setting forth City Defendants' strategy to deny an application for a psychiatric hospital under the pending ordinance doctrine;

b.      Amendments to the City's zoning ordinance in 2012 and 2017 with respect to hospitals/treatment centers designed to prevent a psychiatric hospital on BMV's Property and in the City at large;

c.      The application of the City's zoning ordinance, and the amendments thereto, to BMV's Property, BMV's land use applications, and the psychiatric hospital use in order to deny BMV's disabled patients their right to care in a psychiatric hospital within the City;

d.      The handling of BMV's Zoning Permit Application outside of the procedures established in the MPC or the City's own ordinances;

e.      The City's direct efforts to prevent BMV from developing a psychiatric hospital under the 2013 Land Development Approval;

f.      The City's active interference with the Purchase and Sale Agreement between BMV and Prospective Purchaser for the purchase of the Property and development of a psychiatric hospital on it;

g.      The City's bad faith review of BMV's 2017 Land Development Application; and

h.      The overarching strategy to prevent a psychiatric hospital in the City.

116.   The City's actions violate the Rehabilitation Act, and such actions harmed and continue to harm BMV and BMV's disabled patients.

117.   Because of the City's discriminatory behavior, BMV has expended time and financial resources and has suffered harm.  BMV's expenses include but are not limited to the following:

a.      Zoning application fees;

b.      Land development application fees;

c.      Engineering fees to prepare site plans; and,

d.      Legal fees, and other consultant fees to pursue zoning approvals and land development approvals, to respond to the City's handling of BMV's zoning and land development applications, and to prosecute appeals from the City's denials of BMV's applications.

118.     Because of the City's discriminatory behavior, BMV is no longer able to develop and operate a psychiatric hospital on the Property.

119.     Because of the City's discriminatory behavior, BMV suffered harm and economic injury by being denied the opportunity to conduct its business and provide a service without interference by Defendant, resulting in substantial lost profits.

120.     Because of the City's discriminatory behavior, BMV's disabled patients are denied their right to care in a psychiatric hospital within the City.

121.     Because of the City's discriminatory behavior, BMV has suffered, and will continue to suffer, losses as set forth hereinabove.

**COUNT III**
**BETHLEHEM MANOR VILLAGE, LLC v. CITY OF BETHLEHEM, CITY COUNCIL, and MAYOR**
**VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAIMS**

122.     BMV incorporates paragraphs 1 through 121 above as if fully set forth.

123.     BMV's claim is brought under 42 U.S.C. § 1983.

124.     The City Defendants are liable for violations of 42 U.S.C. § 1983 where the City Defendants, acting under color of state law, officially adopted through City Council and/or informally adopted by custom, a discriminatory policy against patients of psychiatric hospitals and deprived BMV of their right to develop a psychiatric hospital on its Property in the City. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

125.     The City Defendants' actions, which constitute an unlawful discriminatory policy in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, include:

a.  The issuance of the 2017 Interoffice Memorandum recommending an amendment to the City's zoning ordinance to <u>prevent</u> standalone psychiatric hospitals, denying needed care for "those people," and setting forth City Defendants' strategy to deny an application for a psychiatric hospital under the pending ordinance doctrine;

b.  Amendments to the City's zoning ordinance in 2012 and in 2017 with respect to hospitals/treatment centers designed to prevent a psychiatric hospital on BMV's Property and in the City at large;

c.  The application of the City's zoning ordinance, and the amendments thereto, to BMV's Property, BMV's land use applications, and the psychiatric hospital use in order to deny BMV's disabled patients their right to care in a psychiatric hospital within the City;

d.  The handling of BMV's Zoning Permit Application outside of the procedures established in the MPC or the City's own ordinances;

e.  The City Defendants' direct efforts to prevent BMV from developing a psychiatric hospital under the 2013 Land Development Approval;

f.  The City Defendants' active interference with the Purchase and Sale Agreement between BMV and Prospective Purchaser for the purchase of the Property and development of a psychiatric hospital on it;

g.  The City Defendants' bad faith review of BMV's 2017 Land Development Application; and

h.  The overarching strategy to prevent a psychiatric hospital in the City.

126.    The City Defendants' extraordinary efforts to prevent BMV's psychiatric hospital, or any psychiatric hospital, from opening within the City, as set forth in paragraphs 125(a) through 125(h), constitute an unlawful policy to prevent a psychiatric hospital in the City based on irrational prejudices against, and perceptions of patients suffering from mental disorders, and is not rationally related to any legitimate government interests.

127.    The 2017 Zoning Amendment, adopted to entrench City Defendants' discriminatory policy as part of the City's zoning ordinance, remains in force today.

128.    Because of the City's discriminatory behavior, BMV has expended time and financial resources and has suffered harm. BMV's expenses include, but are not limited to, the following:

      a.      Zoning application fees;

      b.      Land development application fees;

      c.      Engineering fees to prepare site plans; and,

      d.      Legal fees, and other consultant fees to pursue zoning approvals and land development approvals, to respond to the City's handling of BMV's zoning and land development applications, and to prosecute appeals from the City's denials of BMV's applications.

129.    Because of the City Defendants' discriminatory policy, BMV is no longer able to develop and operate a psychiatric hospital on the Property.

130.    Because of the City Defendants' discriminatory policy, BMV suffered harm and economic injury by being denied the opportunity to conduct its business and provide a service without interference by City Defendants, resulting in substantial lost profits.

131.    Because of the City Defendants' discriminatory policy, BMV's disabled patients are denied their right to care in a psychiatric hospital within the City.

132.    Because of the City Defendants' discriminatory policy, BMV has suffered, and will continue to suffer, losses as set forth hereinabove.

**<u>REQUESTED RELIEF</u>**

WHEREFORE, BMV respectfully requests that this Honorable Court award it the following relief:

1.    Find and declare that City Defendants' actions described hereinabove violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

2.    Issue a permanent injunction against City Defendants enjoining City Defendants from continuing to violate the United States Constitution and 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

3.    Award BMV damages for the lost profits and other harm it suffered as a result of City Defendants' discriminatory practices, including, but not limited to BMV's zoning application fees, land development application fees, engineering fees to prepare site plans, legal fees, and other consultant fees to pursue zoning approvals and land development approvals, to respond to the City's handling of BMV's zoning and land development applications, and to prosecute appeals from the City's denials of BMV's applications.

4.    Award BMV its reasonable attorney fees and costs.

5.    Award any other relief this Honorable Court deems appropriate.

## JURY TRIAL DEMAND

BMV respectfully requests trial by jury in this case.

By:  /s/ *John P. McShea*
    John A. VanLuvanee
    Attorney ID #15974
    Michael E. Peters
    Attorney ID #314166
    John P. McShea
    Attorney ID #325938
    **EASTBURN AND GRAY, P.C.**
    PO Box 1389
    Doylestown, PA  18901
    215-345-7000