## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BETHLEHEM MANOR VILLAGE, LLC,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| v. | |
| **CITY OF BETHLEHEM et al.,** | **NO.  22-5215** |
| **Defendants.** | |

## MEMORANDUM

Bethlehem Manor Village ("BMV") accuses the City of Bethlehem ("Defendant City"), City Council ("Defendant Council"), and Robert J. Donchez ("Defendant Mayor") (collectively, "City Defendants") of implementing discriminatory policies against psychiatric hospitals by preventing BMV from building a psychiatric hospital on their property located in the City of Bethlehem. BMV alleges due process and equal protection violations pursuant to 42 U.S.C. § 1983, the United States Constitution, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq ("RA"). City Defendants seek to dismiss the claims as time-barred; Defendant City Council and Defendant Mayor seek to dismiss claims for failing to allege that they are separate and distinct legal entities from Defendant City; and Defendant Mayor moves to dismiss BMV's due process and equal protection claims.

## I.    BACKGROUND[1]

### A.    Jurisdiction & Venue

Jurisdiction is proper under federal question jurisdiction under 28 U.S.C §§ 1331, 1343(a), 42 U.S.C. § 12182(a), and 29 U.S.C. § 794(a). Plaintiff's action is brought under 42 U.S.C. §

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

12101, et seq.; 29 U.S.C. § 794, et seq.; 42 U.S.C. § 1983; and the Fourteenth Amendment of the U.S. Constitution. (ECF No. 17 at 2, ¶¶1, 3.) Venue lies in this judicial district pursuant to 28 U.S.C. § 1391. (ECF No. 17 at 2, ¶2.)

### B. Factual Background

BMV owns property in Defendant City zoned for a hospital or similar health facility (ECF No. 17 at 3, ¶¶ 9–11.) Before being amended, the zoning ordinance ("2012 Zoning Ordinance") permitted the development of a hospital defined as **"[a] building(s) which is licensed by the Pennsylvania Department of Health as a [h]ospital, and which involves the diagnosis and treatment of human ailments."** (ECF No. 17 at 4, ¶16 (emphasis added); ECF No. 17-2 at 2.) BMV filed land development plans for a psychiatric hospital on its property in April 2013 and was granted approval by City's Planning Commission on September 12, 2013 ("2013 Land Development Application") on the condition that BMV (1) shall not operate a treatment center at this site as defined in the 2012 Zoning Ordinance and (2) obtain a determination from the City's Zoning Officer that its proposed use satisfies all provisions of the Zoning Ordinance prior to receiving a building permit. (ECF No. 17 at 4, ¶¶17–19.)

BMV notified the City about a prospective developer for the property in October 2015 and submitted a building site plan to the City's Zoning Officer for approval. (ECF No. 17 at 5, ¶21). The Zoning Officer opined that the proposed psychiatric hospital was a permitted use for the property ("2015 Zoning Opinion"). (ECF No. 17 at 6, ¶¶23–24.) BMV entered a purchase agreement with a prospective developer but faced obstacles in the building permit approval process, despite the 2015 Zoning Opinion. (ECF No. 17 at 5, ¶22.) The developer terminated the agreement with BMV in September 2016. (ECF No. 17 at 7, ¶29.) In February 2017, BMV requested a determination from the Zoning Officer that the proposed psychiatric facility was a

2

permitted "hospital" as defined by the 2012 Zoning Ordinance. (ECF No. 17 at 7, ¶30.) In a meeting after the request for a determination from the Zoning Officer, Defendant Mayor instructed city officials—including the Zoning Officer and Assistant City Solicitor—to prevent psychiatric hospitals from opening because he "[did] not want those people here." (ECF No. 17 at 7–8, ¶32.) Subsequently, the Zoning Officer requested additional details from BMV before determining whether a proposed psychiatric facility was a "hospital" under the 2012 Zoning Ordinance. (ECF No. 17 at 8, ¶34.) The Zoning Officer then refused to process BMV's request and requested additional information. (ECF No. 17 at 8, ¶¶34–37.) BMV asserts it did not provide the supplemental information because it would have required "significant additional time and resources"—e.g., details on patient arrivals and disclosure of the kinds of medication to be distributed. (ECF No. 17 at 7–8, ¶¶30, 33–36.) Plaintiff alleges City Defendants' refusal was intended to "frustrate and delay" BMV's efforts to develop a psychiatric hospital in the city. (ECF No. 17 at 8, ¶37.) BMV filed a new land development application that was accepted by the city on May 2, 2017, but was subsequently rejected for being *incomplete* on June 30, 2017 ("2017 Land Development Application"). (ECF No. 17 at 10, ¶¶43–44.) (emphasis added).

An interoffice memo issued by the Assistant City Solicitor on April 27, 2017, with Defendant Mayor copied, recommended amending the city zoning ordinance to exclude standalone psychiatric hospitals as a permitted use, under which the pending ordinance doctrine would allow the administration to deny BMV's permit application. (ECF No. 17 at 9, ¶¶38–41.) City Defendants rejected the 2017 Land Development Application and adopted the amended zoning ordinance ("2017 Zoning Ordinance") on July 6, 2017. According to the amended zoning ordinance, the definition of a hospital was narrowed to:

> "[a] building(s) which is licensed by the Pennsylvania Department of Health as a Hospital, and which involves the diagnosis and treatment of human ailments, **and**

**which may include behavioral health facilities and psychiatric hospitals operated in accordance with all laws and regulations, provided the behavioral health facilities occupy no more than 25% of the floor space of the hospital facilities directly associated with the diagnosis, care, treatment, and sleeping facilities of patients"**

Bethlehem, Pennsylvania, Zoning Ordinance § 1302.56; (ECF No. 17 at 10, ¶¶45–46) (emphasis added). BMV notified City Defendants that it believed they were without authority to refuse to process the land development application that they had submitted in 2017 before the prohibitive amendment. (ECF No. 17 at 11–12, ¶¶49–53.) The City's planning commission discussed the 2017 Land Development Application at a meeting in January 2018. (ECF No. 17 at 12, ¶54.) BMV alleges it did not receive written notice of the meeting and did not become aware of the meeting until a few days prior. (*Id*.) BMV requested a continuance under 53 PA. CON. STAT. § 10508(3) which the commission denied.  BMV's 2017 Land Development Application was also denied by the commission. (ECF No. 17 at 12, ¶56.) BMV appealed the denial of the 2017 Land Development Application to the Northampton County Court of Common Pleas asserting the City acted in bad faith and the denial was part of City Defendant's ongoing effort to prevent BMV from developing a psychiatric hospital on its property. (ECF No. 17 at 12, ¶57.)

On July 11, 2018, BMV submitted a zoning permit application ("2018 Zoning Permit Application") to the Zoning Officer. On July 20, 2018, the Zoning Officer denied BMV's application because the proposed psychiatric facility was a "treatment center" under the 2012 Zoning Ordinance, thus a prohibited use. (ECF No. 17 at 5, 10–11, 14–15, ¶¶19(c), 46, 47, 66–68, 72.) The permit denial was affirmed by the City's Zoning Housing Board and the Northampton County Court of Common Pleas but was reversed by the Commonwealth Court of Pennsylvania on April 8, 2021. *See Bethlehem Manor Vill., LLC* v. *Zoning Hearing Bd.*, 251 A.3d 448, 450 (Pa. Commw. Ct. 2021) (holding BMV's proposed use was permitted use under the 2012 Zoning

4

Ordinance); *Bethlehem Manor Vill. LLC* v. *Zoning Hearing Bd.*, 260 A.3d 922 (Pa. 2021) (denying City Defendants petition for appeal); (ECF No. 17 at 15–16, ¶¶73, 77–79.)

In July 2022, during a meeting with an unidentified member of Defendant City's Planning and Zoning Bureau, BMV alleges it learned that the challenges in developing a psychiatric hospital were part of an *intentional* city-wide discriminatory policy implemented by City Defendants to exclude psychiatric patients. (ECF No. 17 at 20, ¶¶85–86.) Had the facility been approved, BMV alleges it expected to profit $2.5 million annually (ECF No. 17 at 21, ¶93.) BMV asserts upon receiving this information, the City Defendants engaged in alleged discriminatory conduct as stated in the Amended Complaint. This conduct was carried out by the City Defendants in their official capacities—additionally, BMV brings this action against the Defendant Mayor in his individual capacity (ECF No. 17 at 21–22, ¶¶94–95.)

### C. Procedural History

Before the court is City Defendants' Motions to Dismiss ("MTD") BMV's Amended Complaint (ECF Nos. 21–22.) BMV filed its initial complaint on Dec. 29, 2022. (ECF No. 1.) Defendant City Council and Defendant City filed their MTD on Mar. 6, 2023, which was denied as moot on Mar. 24, 2023, due to Plaintiff's Amended Complaint being filed on Mar. 21, 2023. (*See* ECF Nos. 15, 17, 20, 21.) City Defendants filed a MTD as to the Amended Complaint on Mar. 31, 2023, and said Motion is before the court now. (*See* ECF Nos. 21–22.)

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Tombly*, 550 U.S. 544, 570 (2007)). A claim is plausible

when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan* v. *Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* But, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse* v. *Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Plaintiffs cannot prove facts they have not alleged. *Associated Gen. Contractors of Cal.* v. *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Thus, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Rather, a complaint must recite factual allegations enough to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.*

## III.   DISCUSSION

### A.   BMV's Claims Against City Defendants are Not Time Barred

The statute of limitations for claims brought in the Eastern District of Pennsylvania under § 1983, the ADA, and the RA are governed by Pennsylvania's two-year statute of limitations for personal injury claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding the length of the statute of limitations for § 1983 claims is that which the State provides for personal-injury torts); *Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993) (applying Pennsylvania's statute of limitations for personal injury claims for § 1983 relief); *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (both ADA and Rehabilitation Act should follow the statute of limitations for the applicable state statute's personal injury actions) (citing *North Star*

*Steel Co. v. Thomas*, 515 U.S. 29 (1995)); PA. CONS. STAT. § 5524(2) (claims for personal injury must be commenced within two years).

A claim accrues when the plaintiff knew or should have known of the injury upon which its claim for relief is based, even if the full extent of the injury is not then known or predictable. *Germantown Cab Co.* v. *Phila. Parking Auth.*, 2018 WL 3141347, at *4 (E.D. Pa. 2018) (quoting *Sameric Corp. of Del.* v. *City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). When a federal court borrows a state's statute of limitations, tolling principles in the state also apply. *Kach* v. *Hose*, 589 F.3d 626, 639 (3d Cir. 2009).

The parties do not dispute the statute of limitations for BMV's claims is two years. (ECF No. 21 at 14; ECF No. 23 at 10; ECF No. 24 at 9.) They differ on when the claims accrued and whether the claims were tolled. Plaintiff argues that their claims are tolled by the discovery rule or, in the alternative, the continuing violation doctrine. City Defendants argue that those exceptions do not apply.

### 1.     The Discovery Doctrine Does Not Toll the Statute of Limitations

In Pennsylvania, the discovery doctrine allows a statute of limitations to be tolled where a plaintiff "neither knows nor reasonably should have known of his injury and its cause at [the] time his right to institute suit arises." *Fine v. Checcio*, 582 Pa. 253, 269 (Pa. 2005); *Knopick* v. *Connelly*, 639 F.3d 600, 607 (3d Cir. 2011). When applying the discovery rule, the accrual date is not postponed simply because the injured party is unaware of every fact required to file their claim. *Byrd* v. *Mangold*, 2019 WL 5566752, at *4 (E.D. Pa. 2019) (quoting *Zeleznik* v. *United States*, 770 F.2d 20, 23 (3d Cir. 1985)). Instead, the court must determine whether the party had sufficient notice of their injury such to require them to investigate and make a timely claim for relief. *See id.* Once an injured party is put on notice, they have the burden of identifying—within the statutory

period—what claims they have and against whom. *Id.* A party seeking to invoke the discovery doctrine must establish their inability to know the injury despite reasonable diligence, i.e., what a similarly situated reasonable plaintiff would have done to investigate their claims. *Sampathkumar* v. *Chase Home Fin., LLC*, 241 A.3d 1122, 1145 (Pa. 2020).

City Defendants argue the discovery rule does not apply because BMV was aware of the alleged conduct when the city amended the zoning ordinance in 2017 and when their second building permit was denied in June 2018. (ECF No. 21 at 8–9; *see* ECF No. 17 at 20, ¶¶85–86.) Defendant Mayor further argues that BMV had the opportunity to and should have conducted pre-complaint discovery or pursue Right-To-Know requests to ascertain its claims and failed to do so. (ECF No. 25 at 9.)

BMV argues it did not know and could not have reasonably known about City Defendant's "intentional, decade-long effort . . . to keep psychiatric patients out of the City, rather than a mere erroneous zoning decision or series of actions in the normal course of City business" until a member of the City's Bureau of Planning and Zoning revealed those facts in July 2022. (ECF No. 17 at 20, ¶¶85–86; ECF No. 23 at 16; ECF No. 24 at 15–16, 19.) BMV did not allege during any of these time periods that the Defendant City denied their application for the purpose of discriminating against BMV because of their affiliation with individuals protected by the ADA. Thus, BMV was not on notice of their *discrimination* claims against City Defendant until July 2022. BMV alleges they discovered an intentional City-wide policy implemented by City Defendants to exclude psychiatric patients after meeting with an unnamed informant in July 2022. (ECF No. 17 at 20, ¶¶85–86.) BMV argues a Right-to-Know Request would not gather information about the circumstances surrounding City Defendant's discriminatory policies because they were "tightly held" secrets kept from the public. (ECF No. 17 at 20, ¶87; ECF No. 23 at 17.)

While the Court recognizes that Plaintiff did not discover that their potential injury occurred as a result of discrimination until 2022, the discovery rule only delays accrual of the statute of limitations period until the plaintiff discovers that they have been *injured*, not upon awareness that the injury constituted a particular legal wrong. *Harper* v. *Court of Common Pleas*, 2000 WL 688169, at *2 (E.D. Pa. 2000). Awareness of injury, not *legal* injury, is the key factor in determining when the statutory period begins. Thus, BMV's claims are not tolled by its discovery that City Defendant's conduct was motivated by animus because its actual injury was apparent, at the latest, in February 2019 when Plaintiff's most recent zoning request was denied. (ECF No. 21 at 14.)

### 2.      The Continuing Violation Doctrine Tolls the Statute of Limitations.

The continuing violations doctrine is an "equitable exception to the timely filing requirement." *Cowell* v. *Palmer Twp.*, 263 F.3d 286, 292 (3d Cir 2001). There are two kinds of continuing violations: serial violations and systemic violations. "A serial violation is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong." *Saylor* v. *Ridge*, 989 F. Supp. 680, 686 (E.D. Pa. 1998) (citation omitted). A systemic violation, on the other hand, "need not involve an identifiable discrete act of discrimination transpiring within the limitations period, but rather has its roots in a discriminatory policy or practice." *Id.* "So long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." *Id.* Plaintiff argues that this matter falls under the "systematic violation" category.

Defendant Mayor argues BMV's claim of ongoing discrimination does not toll the statute of limitations because claims expire two years after the discriminatory policy ends. (ECF No. 25 at 1.) The denial of BMV's application was made manifest in 2019 and there remained no

outstanding applications or requests which would support tolling. (ECF No. 25 at 3.) Defendant Mayor argues the continued inability of BMV to obtain zoning relief after its final application was rejected in 2019 does not constitute a continuing discriminatory violation. Defendant argues that BMV's allegations—a single isolated permit denial and that no psychiatric hospitals currently exist within city limits—fail to demonstrate an "over-arching policy of discrimination" which might constitute a "continuing violation." (ECF No. 25 at 6.)

BMV argues the systemic continuing violation doctrine applies because City Defendant's conduct amounts to a systemic continuing violation—i.e., an "established pattern" and "over-arching policy" of discrimination against psychiatric patients by City Defendants starting with the adoption of the 2012 Zoning Ordinance. (ECF No. 23 at 13; ECF No. 24 at 11.) BMV asserts that these continuing violations, as it relates to them, continued with the (1) refusal to grant an extension for the Planning Commission to act on the 2017 Application, and (2) denial of the 2017 Application rather than providing BMV with an opportunity to respond to the Commission's outstanding review comments. (ECF No. 23 at 21; *see* ECF No. 17-12 at 9–10, ¶¶29(A)–(F).) BMV alleges that City Defendants' conduct constitutes a systemic continuing violation because City Defendants have implemented discriminatory policies over the last decade that continue today indicating ongoing harm rather than an isolated event. (ECF No. 28 at 2–3.) These discriminatory policies are evidenced by explicit statements by Defendant Mayor that he did not "want those people here—" referencing BMV's patients—and the exercise of authority over various individuals within the City Council, resulting in revisions to an ordinance which made it more difficult for, not only Plaintiff, but for other potential individuals to open psychiatric hospitals and/or treatment centers. (ECF No. 17 at 17, ¶¶84(a)–(c).) "The Administration specifically request[ed] City Council to immediately enact the attached resolution to declare this proposed amendment as a 'pending

ordinance' under the judge-created 'pending ordinance doctrine.'" (ECF No. 17 at 9, ¶40.) This allowed the Administration to deny [BMV's] permit application . . . if the pending zoning amendment would prohibit the use for which the permit is sought." (*Id.*) This was to conform the 2017 Zoning Amendment in line with "community interest[s] [that have] surfaced in steering the placement of hospitals and hospital-styled uses within the City of Bethlehem in more refined ways than recognized in the City Zoning Ordinance." (ECF No. 17-7 at 3.)

Taking BMV's allegations as true, the pattern of conduct and the treatment of Plaintiff's zoning application along with the overt and active effort to prevent a psychiatric treatment center from opening within the City of Bethlehem provides enough basis, at the motion to dismiss stage, to conclude that Plaintiff has sufficiently pled systemic continuing violations of the law and therefore Plaintiff's complaint is timely under the systemic violation doctrine.

### B.     Defendant City Council is Not a Separate and Distinct Legal Entity from Defendant City of Bethlehem.

A governmental entity may be sued in federal court in accordance with governing state law. *See* Fed. R. Civ. P. 17(b)(3). "[A]lthough a municipal corporation and the individual members of its city council may have capacity to sue and be sued, the council itself may not be a legal entity for purposes of Rule 17(b)." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1562 (3d ed. 1998). There appears to be a dearth of precedent surrounding this legal concept within the Third Circuit. However, as other circuits have addressed this issue on more than one occasion, this Court will take guidance from those circuits.

In the Sixth Circuit, a local government's subdivisions are not separate from municipal corporations from which they derive authority, thus they generally cannot be sued as separate legal entities. *See Tysinger* v. *Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)

(police department, as a part of the city, should not have been named as the defendant); *see Matthews* v. *Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (county government was the appropriate defendant to address plaintiff's § 1983 claims as opposed to the city's police department); *Mayers* v. *Williams*, 2017 WL 4857567 (6th Cir. 2017) (affirming district court's dismissal of § 1983 claims against county's drug task force); *see Crutcher* v. *Ct. Psychiatric Clinic*, 2017 WL 5514812 (6th Cir. 2017) (affirming district court's dismissal of claims against city's law department).

The same rings true in the Seventh Circuit. *See generally Bonilla* v. *City Council of City of Chicago*, 809 F. Supp. 590, 600–01 (N.D. Ill. 1992) (absent specific statutory authority, a city council is not a suable entity for purposes of challenging City of Chicago's remapping of wards)*; see* e.g., *Dr. Martin Luther King, Jr. Movement, Inc.* v. *City of Chicago*, 435 F. Supp. 1289, 1294 (N.D. Ill. 1977) (finding that City of Chicago Department of Streets and Sanitation was not a suable entity because it is merely an organizational division of City and thus without independent legal status).

In the Fifth Circuit, a subdivision must "enjoy a separate legal existence, —" i.e., it must be a "separate and distinct corporate entity—" in order to sue or be sued separately from its parent government entity. *Darby* v. *Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991); *see also Kirby Lumber Corp.* v. *State of La. through Anacoco–Prairie State Game and Fish Comm'n,* 293 F.2d 82, 83 (5th Cir. 1961) (holding that a political subdivision cannot pursue a suit on its own unless it is "a separate and distinct corporate entity"). As a result, unless a city has "taken explicit steps . . . to grant [independent legal] authority to the subdivision, the subdivision cannot engage in any litigation except in concert with the city itself. *Darby,* 939 F.2d at 313; *see also Thomas-Melton* v. *Dall. Cnty. Sheriff's Dep't,* 39 F.3d 320 (5th Cir. 1994) (indicating that even if the county

were added as a defendant, the plaintiff would still need to show that a county subdivision was an entity amenable to suit in order to engage in litigation in concert with the government).

Defendant City Council argues the court "must" dismiss the City Council as a defendant because it is the same legal entity as Defendant City. (ECF No. 21 at 1.) BMV fails to allege facts sufficient to establish "an independent basis [of] liability" for Defendant City Council. (ECF No. 21 at 1; ECF No. 17 at 2, ¶¶6–7.) Specifically, the Amended Complaint lists the Defendant City Council as: "City Council of the City of Bethlehem is the governing body of the City, which operates on a mayor-council form of government." *Id.* Plaintiff lists the same addresses for Defendant City Council and Defendant City. *Id.*

BMV argues Defendant City Council's conduct—amending the zoning ordinance in 2012 and again in 2017—constitutes independent discriminatory acts which harmed and continues to harm BMV and its prospective patients. (ECF No. 23 at 22.) Thus, BMV's claims against Defendant City Council are separate and distinct from Defendant City. (*Id.*)

"[Bethlehem] City Council is the legislative body of Bethlehem city government." OVERVIEW, CITY OF BETHLEHEM, www.bethlehem-pa.gov (last visited on Oct. 1, 2024). City Council has authority over "[a]ll matters relating to . . . code violations, . . . Planning, Zoning, Housing Rehabilitation, Inspections, Economic Development, . . . and Redevelopment Authority issues" of the City of Bethlehem, among a host of other things. City Council of Bethlehem Res. No. 2011–214 (2017). Defendant City and Defendant City Council are the same legal entity because Defendant City Council is the group of *live* individuals that exert the authority of a *fictitious* legal entity, Defendant City. *See generally* Bethlehem, Pennsylvania, Zoning Ordinance § 1714.08. As a result, the Court concludes that because the City Council is an operating arm of the City itself, it must be treated as the same legal entity.

C.      **Defendant Mayor is Not Dismissed due to Redundancy of Claims between Defendant Mayor and City Defendant.**

Defendant Mayor argues that Plaintiff's § 1983 claims are redundant because claims against "individual defendants in their official capacities are equivalent to claims against the governmental entity itself." (ECF No. 22 at 17.) Plaintiff does not dispute that claims brought against Defendant Mayor in his official capacity are identical claims to those brought against Defendant City. (ECF No. 24 at 22.) Plaintiffs further allege that, without having conducted discovery, discerning which claims are distinct or which claims are identical is not possible.

While the Court recognizes that claims against an individual in their official capacity and claims against the governmental entity are redundant, the Court also recognizes that dismissal of Defendant Mayor in his official capacity would "serve no laudable purpose." *Capresecco v. Jenkintown Borough*, 261 F. Supp. 319, 322 (E.D. Pa. 2003). Whereas in *Capresecco*, the defendant did not argue that the allegations against them failed to state a cognizable claim under § 1983, redundancy of claims between the official and their office is not a "persuasive basis for dismissal under Rule 12(b)(6)." *Id.* The Court finds the same here.  "[T]his formalistic approach . . . does not correspond to standard § 1983 practice . . . [M]ultiple defendants, whether corporate, municipal, or individual, are commonplace in leading § 1983 actions." *Id.* (citing *Coffman v. Wilson Police Dep't*, 739 F. Supp. 257 (E.D. Pa. 1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). Furthermore, Defendant Mayor must also answer charges against him in their individual capacity, "and so dismissing the official capacity claims against them will serve no laudable purpose." *Id.* This resolution is also reflective of the fact that discovery has not been commenced and Plaintiff has alleged that once discovery has been completed, there may be more

clarity as to what claims are distinct and what claims are identical between Defendant City and Defendant Mayor.

### D.    Claims Against Defendant Mayor in his Individual Capacity

An individual-capacity suit under 42 U.S.C. § 1983 "alleges wrongful conduct taken under the color of state law and seeks relief from the defendant personally." *Whaumbush v. City of Phila*, 747 F. Supp. 2d 505, 514 (E.D. Pa. 2010). In order to incur individual liability, the defendant must be personally involved in the alleged wrong. *Id.* This involvement may be allegations of "personal direction or actual knowledge and acquiescence." *Id.* In the present case, Plaintiff alleges that Defendant Mayor engaged in conduct that deprived them of their Fourteenth Amendment Procedural and Substantive Due Process rights and Equal Protection rights.

#### i.    Procedural Due Process

No state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. Amend. XIV. There are two rights that a plaintiff may assert have been violated under the Fourteenth Amendment Due Process Clause: procedural due process and substantive due process rights.

"[A] state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample* v. *Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [they] were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [them] did not provide due process of law." *King* v. *City of Phila.*, 654 F. App'x 107, 111 (3d Cir. 2016) (quoting *Hill* v. *Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). "The fundamental requirement of

due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976); *see also Kadakia* v. *Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015).

In the present case, Plaintiff does not specifically allege facts that would support a procedural due process claim in their complaint, nor does Plaintiff address procedural due process in either of their Briefs in Opposition to City Defendants' Motions. (ECF Nos. 23–24, 28.) As a result, to the extent that this claim did exist, it is dismissed as being unsupported. *See Warren v. Luzerne Cnty.*, 2010 WL 521130, at *6 (W.D. Pa. 2010) (dismissing plaintiff's claim of equal protection where they failed to allege facts sufficient to support that claim in their complaint and in their brief in opposition to defendant's motion to dismiss).

    ii.   Substantive Due Process

"Substantive due process is a component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Newark Cab Ass'n* v. *City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (quoting *Collins* v. *City of Harker Heights*, 503 U.S. 115, 125 (1992)). To establish a "non-legislative substantive due process claim," the plaintiff must have been deprived of a fundamental protected property or liberty interest. *Newark Cab*, 901 F.3d at 155. To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience. *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017). What constitutes a shocking of the conscience depends on the circumstances of the particular case and ranges from deliberate indifference to actual intent to cause harm. *Id.* (citing *Vargas v. City of Phila.*, 783 F.3d 692, 973

(3d Cir. 2015). BMV is asserting that Defendant Mayor deprived it of a protected property interest in developing a psychiatric hospital for profit.

Only property interests of a "particular quality" are worthy of substantive due process claims under the Constitution. *Selig v. N. Whitehall Twp. Zoning Hearing Bd.*, 653 F'Appx. 155, 157 (3d Cir. 2016). A plaintiff, as a matter of law, establishes a property interest protected by the Fourteenth Amendment when they show "arbitrary governmental actions impinged upon its intended use of property." *Cornell Co., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 261 (E.D Pa. 2007); *see also DeBlasio v. Zoning Bd. of Adjustment for Twp. Of W. Amwell*, 53 F.3d 592, 600–01 (3d Cir. 1995) ("[I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limited the intended land use was arbitrarily or irrationally reached.") (abrogated on other grounds). Plaintiff alleges that there was a deliberate and discriminatory effort to preclude them from opening up a psychiatric treatment center. This would fall into the category of protected property interests sufficient to state a claim of substantive due process violation.

The next step of the analysis is whether such a decision "shocks the conscience." Plaintiff alleges that Defendant Mayor called a highly irregular meeting, far outside the City's normal zoning and land development procedures and gave specific direction to City officials to keep psychiatric patients out of the city. (ECF No. 17 at 7–8, ¶¶31–32.) BMV argues Defendant Mayor's conduct was and continues to be "so egregious and tainted by improper motive that it shocks the conscious" as he "continues to portray patients of psychiatric hospital[s] as a danger to . . . the city." (ECF No. 24 at 24.) Furthermore, Defendant Mayor explicitly stated he wanted to exclude "those people" from entering the city. (*Id.*) The Court finds, at this stage, this is sufficient to shock

the conscience as to Plaintiff's deprivation of property rights. Courts have allowed substantive due process claims to survive the motion to dismiss stage on less. *Cornell.*, 512 F. Supp. 2d at n. 14 (holding that "in the absence of a fully developed factual record and under the obligation to draw all reasonable inferences in [plaintiff]'s favor, [the Court] cannot hold that it appears beyond doubt that plaintiff can prove no set of facts that would prove the existence of conscious-shocking behavior by defendants.").

Finally, the Court must determine whether Defendant Mayor, as an individual acting under color of law, has had personal involvement in the alleged wrongdoing. Such personal involvement can be shown "through allegations of personal direction" in violation of a plaintiff's constitutional rights. *Rode*, 845 F.2d at 1207. A defendant may be liable if, with deliberate indifference to the consequences, they "established and maintained a policy, practice or custom which directly caused the constitutional harm." *Plouffe* v. *Cevallos*, 2012 WL 1994785, at *4 (E.D. Pa. 2012) (citing *Santiago* v. *Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).  Liability may also attach if the defendant "participated in violating the plaintiff's rights [or] directed others to violate them. *Id.* Thus, a plaintiff must plead that a government-official defendant, through the official's own individual actions, has violated the Constitution. *Id.* (citing *Iqbal*, 556 U.S. at 676). Plaintiff has pled sufficient facts to show that Defendant Mayor had personal involvement in the wrongdoing. In fact, there is sufficient factual information to show, at this stage in the litigation, that Defendant Mayor led the wrongdoing, including calling a special meeting, suggesting a revised ordinance, exercising authority over other City Council employees, and explicitly stating he did not want "those people" here. There are sufficient facts pled for Plaintiff to pursue individual liability against Defendant Mayor.

E.      **Equal Protection**

In the present case, just as with their procedural due process claims, Plaintiff does not specifically allege facts that would support an equal protection claims in their complaint, nor does Plaintiff address equal protection in either of their Briefs in Opposition to City Defendants' Motions. (ECF Nos. 23–24, 28.) As a result, to the extent that this claim did exist, it is dismissed without prejudice. *See Warren v. Luzerne Cnty.*, 2010 WL 521130, at *6 (W.D. Pa. 2010) (dismissing plaintiff's claim of equal protection where they failed to allege facts sufficient to support that claim in their complaint and in their brief in opposition to defendant's motion to dismiss).

### F.     Defendant Mayor is Not Entitled to Qualified Immunity

Defendant Mayor argues he is entitled to qualified immunity because the property interest asserted in the substantive due process claim alleged by Plaintiff is not so "clearly established" as to prevent him from otherwise being entitled to qualified immunity for a discretionary function of his job, i.e., rejecting BMV's zoning application. (ECF No. 25 at 10.) Thus, Defendant Mayor argues that he did not knowingly violate any clearly established right of BMV. (*Id*.)

BMV argues Defendant Mayor is not entitled to a defense of qualified immunity because he reasonably understood that his conduct violated BMV's and its patient's established constitutional rights. (ECF No. 24 at 24.) BMV alleges "it cannot be reasonably argued that Defendant Mayor would not have known that BMV's constitutional rights were at issue when he instructed [c]ity officials to keep [p]sychiatric [p]atients out of the [c]ity by stopping BMV's hospital." (ECF No. 24 at 25.) Thus, Defendant Mayor cannot use qualified immunity as a "license to discriminate against certain citizens without fear of reprisal." *Id.*

Qualified immunity is an affirmative defense that is pled by a defendant official. Government officials performing discretionary functions within the scope of their official capacity are generally shielded from liability for civil damages. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 815

(1982). This immunity from liability is qualified—if an official knew or reasonably should have known that the action they took would violate the constitutional rights of a plaintiff, they are not entitled to immunity. *Id*. at 817–18. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 818. Qualified immunity is an immunity from suit rather than a mere defense to liability, thus it must be resolved prior to discovery. *Id.*

A government official is not protected from suit or civil liability if their conduct violates some clearly established statutory or constitutional right and a reasonable person would have known their conduct was unlawful. *Harlow*, 457 U.S. at 818. The defendant official is entitled to qualified immunity if either (1) the alleged conduct did not violate a clearly established right or (2) a reasonable person would not have known the alleged conduct was unlawful. *Williams* v. *Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017). The defendant official has the burden to establish they are entitled to qualified immunity. *E. D.* v. *Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019).

The defendant official must show that, at the time of the alleged conduct, a reasonable person in their position would have believed their conduct was lawful. *E. D.* v. *Sharkey*, 928 F.3d at 306. The law—i.e., the right the plaintiff alleges the defendant official violated—must have a "sufficiently clear foundation in then-existing precedent." *D.C.* v. *Wesby*, 583 U.S. 48, 63 (2018); *see Williams*, 848 F.3d at 570 ("the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises"). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

Property rights are robustly acknowledged within the Third Circuit. *See DeBlasio v. Zoning Bd. Of Adjustment*, 53 F.3d 592, 601 (3d Cir. 1995) (abrogated on other grounds); *Cornell Co., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 261 (E.D. Pa. 2007); *Blanche Rd. Co. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995) (abrogated on other grounds). The rule in *DeBlasio* is particularly clear: arbitrary or irrational decisions to deprive a landowner of the right to use or enjoyment of property is a protected right. *DeBlasio*, 53 F.3d at 600–01. Because property rights are sufficiently established in the Third Circuit, a reasonable person in Defendant Mayor's decision would have been aware that arbitrary (and potentially discriminatory) deprivation of Plaintiff's property rights is a violation of the Constitution. Defendant Mayor called a highly irregular meeting, explicitly stated he did not want people of a certain protected class in his city, denied a zoning permit, and even pushed for the revision of laws to codify the exclusion of a psychiatric hospital in the City of Bethlehem. These are not actions that are protected by an official's discretion. More specifically, the Defendant has not demonstrated that his actions meet the standard for qualified immunity protections. Thus, at this motion to dismiss stage, Defendant Mayor has failed to meet their burden of establishing qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, the Court dismisses the claims against The City Council of Bethlehem as duplicative of their claims against the City of Bethlehem. The Court grants Defendant Mayor's Motion to Dismiss as to the § 1983 procedural due process and equal protection claims only and without prejudice. The Court denies City Defendants' and Defendant Mayor's Motion to Dismiss on all remaining claims.

Plaintiff's ADA, RA, and § 1983 claims against the City of Bethlehem and Defendant Mayor in his official capacity survive along with Plaintiff's § 1983 substantive due process claims against Defendant Mayor in his individual capacity.

An appropriate order follows.

**BY THE COURT:**

/s/ Hon. Kelley B. Hodge

_____

**HODGE, KELLEY B., J.**